128 Cal.Rptr.2d 622 (2002)
104 Cal.App.4th 907
ESTATE OF Cleopatra EUGENE, Deceased.
Mae Alexander, as Executor, etc., Petitioner and Respondent,
v.
Union Rescue Mission, Claimant and Appellant.
No. B156049.
Court of Appeal, Second District, Division One.
December 23, 2002.
*623 Freeman, Freeman & Smiley, Stephen M. Lowe and Todd M. Lander for Claimant and Appellant.
No appearance for Petitioner and Respondent.
MIRIAM A. VOGEL, J.
In 1983, the Legislature eliminated the requirement that witnesses to the execution of a will had to sign the will in the testator's presence. The question in this case is whether the Legislature nevertheless meant to prohibit a postdeath attestation necessitated by a witness's concededly inadvertent failure to sign a will at the time it was executed. We conclude that, had the Legislature intended a temporal limit, it would have said so and that, at least on the facts of this case, a postdeath attestation is proper.

FACTS
Cleopatra Eugene and Barbara Eugene, spinster sisters without issue or other heirs, retained George Hightower to prepare their mutual wills, which he did. On January 29, 1993, the sisters Eugene signed their wills in the presence of two witnesses, Mr. Hightower and Susan Johnson, and Ms. Johnson signed both wills as a witness. Mr. Hightower signed Barbara's will but inadvertently failed to sign Cleopatra's will, an omission that was not discovered until after Cleopatra's death.
Cleopatra's will named Barbara as executrix and left everything to Barbara if Barbara survived Cleopatra, and left everything to the Union Rescue Mission if Barbara died first, with Mae Alexander (Cleopatra's pastor's wife) named as the alternate executrix. Barbara died in 1997. Although Barbara's will is not in the record, it is undisputed that the sisters' testamentary plan was for each to leave everything to the other with the understanding that the survivor's estate would go to charity. (Daniels v. Bridges (1954) 123 Cal. App.2d 585, 588, 267 P.2d 343 [mutual wills are the separate wills of two or more persons which are reciprocal in their provisions]; Gonzalez v. Satrustegui (App.1993) 178 Ariz. 92, 870 P.2d 1188, 1191-1193.) Since Barbara died first, Cleopatra's estate includes all of Barbara's property.
Cleopatra died in February 2001. In July, Mrs. Alexander filed a petition for probate of Cleopatra's will (showing the value of Cleopatra's personal property as $100,000 and the value of her real property as "unknown"). In support of the petition, Mrs. Alexander submitted a declaration from Mr. Hightower in which he stated that he had prepared both wills and witnessed their execution, and that he had believed he had signed both wills at the time they were executed by Cleopatra and Barbara. He also executed a proof of subscribing witness.
The public administrator objected to the petition on the ground that there was "only one witness," objected to Mrs. Alexander's appointment as administrator, and informed the court that he would petition for his appointment as administrator. Although the trial court was "confident that Mr. Hightower [was] telling the truth," that "it was totally inadvertent that he failed to sign" the will when it was executed by Cleopatra, and that he would have signed it on that occasion, the court denied the petition because Mr. Hightower had not signed the will during Cleopatra's lifetime.
The Union Rescue Mission filed a motion for reconsideration and a petition in which it asked the trial court to allow Mr. *624 Hightower to correct the oversight and sign the will as a witness. The motion and petition were denied, and the Union Rescue Mission now appeals.[1]

DISCUSSION

A.
The California Probate Code, first adopted in 1931, was substantially revised in 1983 to etiminate "`technical requirements that often invalidated wills, even where there [was] no reasonable doubt that the testator intended the instrument as his or her will and there [was] no suspicion of fraud.'" (12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, §§ 4-5, pp. 39-41, quoting 16 Cal. Law Revision Com. Rep. (1982), pp. 2318-2319.) The 1983 revisions adopted a large part of the Uniform Probate Code, which in turn recognized that a will, unlike a deed or an inter vivos trust instrument, becomes effective only after its author's death, and that a challenge to its validity cannot be defended or explained by the author. It was with that thought in mind that the drafters of the Uniform Probate Code decided to minimize formal execution requirements but retain the requirement of two witnesses who could testify about the circumstances under which the will was executed. (Matter of Estate of McGurrin (App.1987) 113 Idaho 341, 743 P.2d 994, 999; Sherwin, Clear and Convincing Evidence of Testamentary Intent: The Search for a Compromise Between Formality and Adjudicative Justice (2002) 34 Conn. L.Rev. 453, 455-156 [formalities serve three general functions: an evidentiary function by furnishing reliable evidence about the testator's intent; a protective function by reducing the possibility of interference with the process of execution; and a cautionary or ritual function to help ensure that the will reflects a considered decision].)

B.
Before 1983, a formal or witnessed will had to be in writing, subscribed, acknowledged and published by the testator, and attested by two witnesses in the presence of the testator. (Prob.Code, former § 50, repealed Stats.1983 ch. 842, § 18, p. 3024; Crook v. Contreras (2002) 95 Cal. App.4th 1194, 1204, 116 Cal.Rptr.2d 319.)[2]
As part of the 1983 revisions, the Legislature added section 6110 to the Probate Code to eliminate "the requirements (1) that the testator's signature be `at the end' of the will, (2) that the testator `declare' to the witnesses that the instrument is his or her will, (3) that the witnesses' signatures be `at the end' of the will, (4) that the testator `request' the witnesses to sign the will, and (5) that the witnesses sign the will in the testator's presence. Section 6110 continued the requirements of former Section 50(1) that the will be in writing, (2) that the will be signed by the testator or *625 by someone else who signs the testator's name in the testator's presence and by the testator's direction, (3) that the will be signed or the testator acknowledge the signature in the presence of two witnesses who are present at the same time, and (4) that the witnesses sign the will." (20 Cal. Law Revision Com. Rep. (1990) pp. 1001, 1420, emphasis added.)[3] To that end, section 6110 provides:
"(a) Except as provided in this part, a will shall be in writing and satisfy the requirements of this section.
"(b) The will shall be signed by one of the following: [¶] (1) By the testator. [¶] (2) In the testator's name by some other person in the testator's presence and by the testator's direction. [¶] (3) By a conservator pursuant to a court order to make a will under Section 2580.
"(c) The will shall be witnessed by being signed by at least two persons each of whom (1) being present at the same time, witnessed either the signing of the will or the testator's acknowledgement of the signature or of the will and (2) understand that the instrument they sign is the testator's will." (Italics added.)
Section 6110, which does not require either witness to sign in the presence of the other or of the testator or at any particular time, was based on a similar provision in the Uniform Probate Code which has "no requirement that the witnesses sign before the testator's death" and which, "in a given case," could be "satisfied even if the witnesses sign after the testator's death." (8 West's U. Laws Ann. (1998) U. Prob.Code (1969) com. to § 2-502, p. 145.)

C.
The issue in our case is whether section 6110 permits an otherwise qualifying witness to sign the will after the testator's death. We hold that, on the facts of this case, it does.
Under former section 50, where the witnesses were required to sign the will in the presence of the testator, it would have been impossible for a witness to sign the will after the testator's death and the courts were never faced with the issue now before us. In the 20 years since the statute was amended, the issue has arisen only once (or, to be precise, has only once found its way into a published opinion). In Crook v. Contreras, supra, 95 Cal.App.4th at pages 1204-1205, 116 Cal.Rptr.2d 319, the court said there is "no indication that the Legislature intended by its 1983 statutory revision to permit postdeath subscription of a will," expressed concern that a postdeath signature would "invite fraud and subvert the basic intent of will authentication requirements," and concluded "that the subscription of a will by two witnesses must occur prior to the testator's death, and a will that has not been subscribed by two witnesses at the time of the testator's death neither complies nor substantially complies with ... section 6110." On the facts of our case, we disagree.

1.
We believe that where, as here, it is undisputed that Cleopatra and Barbara executed mutual (reciprocal) wills at the same time and in the same place, that Barbara's will was signed by both witnesses, that both witnesses intended to *626 sign Cleopatra's will at the time it was executed, but that through oversight Mr. Hightower neglected to sign Cleopatra's will, and thatperhaps most importantlythere is not the slightest hint of fraud or any wrongdoing by anyone involved at the time the wills were executed or at any time thereafterCleopatra's will must be admitted to probate. Simply stated, we read the plain language of section 6110 to express a legislative intent to allow probate under these conditions (Estate of Perry (1996) 51 Cal.App.4th 440, 444, 58 Cal. Rptr.2d 797 [where the statute is clear, a court should not look for an ambiguity that does not exist]; 8 West's U. Laws Ann., supra, U. Prob.Code (1969) com. to § 2-502, p. 145), and we find substantial compliance with both the letter and the spirit of the rules governing the execution of formal wills (In re Will of Kiefer (N.Y. 1974) 78 Misc.2d 262, 356 N.Y.S.2d 520, 523).[4]

2.
The cases relied on by Crook v. Contreras, supra, 95 Cal.App.4th 1194, 116 Cal. Rptr.2d 319, do not preclude the conclusion we reach in our case.
In re Cannock's Will (1948) 81 N.Y.S.2d 42, is a one-judge decision of the Queens County Surrogate's Court in which the signatures of all three witnesses were added after the testator's death and no statute is cited. Matter of Fish's Will (1895) 34 N.Y.S. 536, is a two-page opinion in which the court states, without any authority at all, that the New York statute (which is neither cited nor quoted) requires that the witnesses "become such during the lifetime of the testator." (Id. at p. 537.)
In In re Estate of Flicker (1983) 215 Neb. 495, 339 N.W.2d 914, where both witnesses signed the will after the testator's death, the Nebraska Supreme Court held that a statute similar to ours permits the witnesses to sign the will out of the testator's presence and at a date after the testator signed the will, but not after his deathbecause "[a] line must be drawn, and we believe that it is unreasonable to *627 [permit] witnesses to sign a will at any time after the testator's death," and because the court could "think of no good reason for a delay in signing by witnesses until after the testator's death." (Id. at p. 915.) Obviously, the Nebraska Supreme Court didn't think about the problem we have before us in this case. (See also Matter of Estate of Peters (1986) 210 N.J.Super. 295, 509 A.2d 797; Matter of Estate of Mikeska (1985) 140 Mich.App. 116, 362 N.W.2d 906; Rogers v. Rogers (1984) 71 Or.App. 133, 691 P.2d 114; Matter of Estate of Royal (Colo.1992) 826 P.2d 1236; Gonzalez v. Satrustegui, supra, 870 P.2d at pp. 1194-1195.)[5]

D.
Formal attestation rules exist to prevent fraud, not to encourage it by penalizing candor about the condition of a will when it is examined after the testator's death. For this reason, we conclude that, in the absence of legislative direction to the contrary, judicial inquiry should focus on a rule that best accommodates all circumstances surrounding the actual witnessing of a testator's unquestioned intent concerning the disposition of her estate. We therefore disagree with the absolute rule articulated in Crook v. Contreras, supra, 95 Cal.App.4th 1194, 116 Cal.Rptr.2d 319, and conclude instead that, at least on the facts of this case, a postdeath subscription of a will is not prohibited by section 6110. (8 West's U. Laws Ann., supra, U. Prob.Code (1969) com. to § 2-502, p. 145 [the Uniform Probate Code on which section 6110 is based could "in a given case" be satisfied "even if the witnesses sign after the testator's death"].)

DISPOSITION
The order is reversed and the cause is remanded to the trial court with directions to grant the petition for the probate of Cleopatra Eugene's will.
We concur: SPENCER, P.J., and ORTEGA, J.
NOTES
[1] No respondent's brief has been filed by the Public Administrator or anyone else.
[2] All section references are to the Probate Code. Although the early cases insisted on strict compliance with the formalities of execution (Estate of Seaman (1905) 146 Cal. 455, 462, 80 P. 700; Estate of Moore (1949) 92 Cal.App.2d 120, 124, 206 P.2d 413; Estate of Howell (1958) 50 Cal.2d 211, 215, 324 P.2d 578 [statutory requirements must be strictly followed in the execution of a will, and the testator's intention is not to be considered in determining whether such requirements have been met]), many later cases liberalized the process by upholding wills where there was substantial, though not strict, compliance with the statutory requirements, and by invoking a presumption of due execution where there was no compliance at all with one part of the statute's requirements. (12 Witkin, Summary of Cal. Law, supra, Wills and Probate, § 194, p. 224.)
[3] In 1990, as part of another overhaul of the Probate Code, section 6110 was repealed and reenacted without change. (Stats. 1990, ch. 79, § 14, pp. 463, 684.) In 1996, section 6110 was amended to authorize a conservator, acting pursuant to a court order, to execute a will for the testator. (Stats. 1996, ch. 563, § 20.) But there have been no amendments to the witness requirements at issue in this case.
[4] Crook v. Contreras, supra, 95 Cal.App.4th at page 1205, footnote 4, 116 Cal.Rptr.2d 319, distinguishes In re Will of Kiefer, supra, 78 Misc.2d 262, 356 N.Y.S.2d 520, on its facts. Neither case is the same as ours but In re Will of Kiefer is closer than Crook. In Crook, unlike our case, the decedent and her husband had created an inter vivos trust with detailed provisions about the survivor's rights, including a provision that the trust could not be amended after the death of the first spouse except as provided in the trust. On the same day the trust was created, the wife executed a will. The husband died first. Seven years later, the wife executed two purported trust amendments, which were signed by the wife and her lawyer as notary but not by anyone else. After the wife died, her lawyer and another purported witness signed attestations to the effect that the wife had intended the amendments to operate as "testamentary instruments." The amendments were then offered for probate along with her will. There ensued a dispute between the trustee named in the trust and the executor named in the wife's will. Crook holds that, assuming the trust amendments could be construed as a codicil, they could not be admitted to probate because they did not satisfy the requirements of section 6110because the "witnesses" did not sign the documents during the wife's lifetime. (Crook v. Contreras, supra, 95 Cal. App.4th at pp. 1197-1205, 116 Cal.Rptr.2d 319.) In In re Will of Kiefer, a husband and wife had simultaneously executed separate wills; both witnesses signed the wife's will but one of them failed to sign the husband's will. The New York court admitted the husband's will to probate because the contemporaneously executed wife's will bore both witnesses' signatures, and because the testimony of the witnesses established substantial compliance. (In re Will of Kiefer, supra, 356 N.Y.S.2d at p. 522.) Our case is plainly closer to In re Will of Kiefer than to Crook, and our reliance on the doctrine of substantial compliance is consistent with California law. (Estate of LaMont (1952) 39 Cal.2d 566, 569-570, 248 P.2d 1.)
[5] In all of the cases cited in Crook, there was a dispute about the disposition of the testator's estate, either by way of a will contest or dueling petitions for probate. We emphasize that there is no such dispute in our case, and that a refusal to probate Cleopatra's will would result in an escheat rather than her intended gift to charity. (Estate of McNeill (1964) 230 Cal.App.2d 449, 452, 41 Cal.Rptr. 139 [courts look with favor upon all attempted charitable donations, and will endeavor to carry them into effect if it can be done consistently with the rules of law; to that end, a will providing a gift to charity will be liberally construed to accomplish the intent of the donor]; Estate of McGuigan (2000) 83 Cal. App.4th 639, 644, 99 Cal.Rptr.2d 887 [escheats are not favored by the law and are to be avoided whenever possible].)