[No. B162289. Second Dist., Div. Eight. Dec. 18, 2003.]

Estate of BENJAMIN RABINOWITZ, Deceased.

LAUREL GREEN FISHER RABINOWITZ, Appellant, v.
JENEE FISHER RABINOWITZ et al., Respondents.

**COUNSEL**

Hinojosa & Wallet, Lynard C. Hinojosa and Trudi Sabel for Appellant.

Garvey Schubert Barer, Donald B. Scaramastra and Bruce A. McDermott for Respondents.

**OPINION**

**RUBIN, J.**—Laurel Green Fisher Rabinowitz appeals from the trial court's order denying her petition to declare invalid the power of attorney that decedent Benjamin Rabinowitz granted to his brother. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

Benjamin Rabinowitz, who customarily used Ben as his first name, was diagnosed with terminal brain cancer in July 1999. On August 11, 1999, he signed a durable power of attorney form naming his brother, respondent Daniel Fisher, as his attorney in fact. That day or the next, Ben told his mother, respondent Jenee Fisher Rabinowitz, that he had given Daniel a power of attorney. A month or two later, Ben repeated himself, telling his cousin, Spence Patterson, the same thing.

In October 1999, Ben married appellant Laurel Green Fisher Rabinowitz. A little over a year later in January 2001, he died without leaving a will. Two weeks before Ben's death, however, Daniel established the B.R. Fisher Trust with Ben's separate property because Ben wanted his estate to go to charity.

In November 2001, appellant, who stood to inherit one-half of Ben's estate if his gift to charity were defeated, filed a petition challenging Daniel's power of attorney in creating the trust. The petition alleged Daniel lacked authority to act for Ben because no one had witnessed Ben's execution of the

power of attorney. In response to the petition, Jenee Fisher Rabinowitz—who would inherit one-quarter of Ben's estate if appellant's petition succeeded—and Spence Patterson signed attestation clauses to the power of attorney in which they stated Ben had told them about the power of attorney shortly after he granted it; in Jenee's case, within a day of his signing it, and in Patterson's case within two or three months. The court found the power of attorney was valid and denied the petition. This appeal followed.

## DISCUSSION

■ Probate Code section 4121[1] imposes three conditions for creating a valid power of attorney. First, the document creating the power of attorney must be dated. (§ 4121, subd. (a).) Second, the person granting the power of attorney must (with an exception not applicable here) sign it. (§ 4121, subd. (b).) Third, two witnesses (or a notary public) must also sign it. (§ 4121, subd. (c).)[2]

■ When two witnesses sign the power of attorney, they must satisfy three requirements, two of which the parties stipulated were met here. First, the witnesses must be adults. (§ 4122, subd. (a).) Second, neither may be made the attorney. (§ 4122, subd. (b).) And third—and this requirement lies at the center of this appeal—each "shall witness . . . the principal's *acknowledgment* of . . . the power of attorney." (§ 4122, subd. (c), italics added.)[3]

Appellant contends Jenee and Patterson did not satisfy the third requirement because they did not witness Ben's "acknowledgement" of the power of attorney. According to appellant, such acknowledgement required Ben to show them the document itself with his signature on it; it was not enough for him merely to tell them about it. In support, appellant argues one cannot witness that which one cannot see, and because Ben did not show them the power of attorney, they did not witness its acknowledgement.

■ We conclude appellant interprets "acknowledgement" too narrowly. The power of attorney statute does not define "acknowledgement" or

---

[1] All further section references are to the Probate Code.

[2] Section 4121 provides: "A power of attorney is legally sufficient if all of the following requirements are satisfied: [¶] (a) The power of attorney contains the date of its execution. [¶] (b) The power of attorney is signed either (1) by the principal or (2) in the principal's name by another adult in the principal's presence and at the principal's direction. [¶] (c) The power of attorney is either (1) acknowledged before a notary public or (2) signed by at least two witnesses who satisfy the requirements of Section 4122."

[3] Section 4122 provides: "If the power of attorney is signed by witnesses, as provided in Section 4121, the following requirements shall be satisfied: [¶] (a) The witnesses shall be adults. [¶] (b) The attorney-in-fact may not act as a witness. [¶] (c) Each witness signing the power of attorney shall witness either the signing of the instrument by the principal or the principal's acknowledgment of the signature or the power of attorney."

state that the principal creating the power of attorney must show the power of attorney to the witnesses. Thus, nothing in the statute precludes acknowledging the document orally.

We draw support for a broader meaning of acknowledgment from Probate Code provisions dealing with acknowledgement of wills. The California Law Revision Commission comments for wills state that a testator can acknowledge his will by means other than showing it to witnesses. The comments say, "The witness may obtain the necessary understanding [that the instrument being witnessed is a will] by any means. For example, the witness may know that the instrument is a will by examining the instrument itself or from the circumstances surrounding the execution of the will. Nothing . . . requires that the testator disclose the contents of the will." (§ 6110; Cal. Law Revision Com. com. re 1990 enactment, 53 West's Ann. Prob. Code (1991 ed.) foll. § 6105, p. 251; see also *Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191] ["the common meaning of 'acknowledge' is 'to admit to be true or as stated; confess' "]; Webster's 3d New Internat. Dict. (1981) p. 17, cited by *Griswold* [" 'to show by word or act that one has knowledge of and agrees to (a fact or truth) . . . [or] concede to be real or true . . . [or] admit' "].)

Appellant contends that even if the Probate Code permitted Ben to orally acknowledge the power of attorney, Patterson's and Jenee's signing of the attestation clauses after Ben's death violated the acknowledgement requirement. Appellant notes that Ben's authority to grant a power of attorney ended at his death. (§ 4152, subd. (b).) Appellant reasons that steps to perfect a power cannot be taken after the time to create the power expires. Thus, appellant concludes, witnesses cannot sign the power of attorney after the principal dies.

The Probate Code does not state when witnesses must sign the power of attorney. (§ 4121, subd. (c).) There being no explicit time requirement, the question is whether there is, as appellant urges, an implicit one. There is no authority on point, but the most recent analogous case suggests no implied limit. In *Estate of Eugene* (2002) 104 Cal.App.4th 907 [128 Cal.Rptr.2d 622] (*Eugene*), two sisters signed mutual wills giving the property of whoever died first to the other, surviving sister. When the second sister died, the wills gave their property to the sisters' favorite charity. The attorney who prepared the wills signed one of the wills as a witness, but inadvertently failed to sign the second will. When the second sister died, it was discovered the attorney had not witnessed the will. (*Id.* at p. 909.) The probate court rejected the attorney's offer to sign the will after the fact and refused to admit the will into probate. (*Id.* at p. 910.)

The appellate court reversed the probate court. Stating that "had the Legislature intended a temporal limit [to signing the witness attestation], it

would have said so" in the statutes governing wills, the appellate court found no limit existed. (*Eugene, supra,* 104 Cal.App.4th at p. 909.) In addition, the court noted two policies supported allowing the postdeath signature. First, there was no evidence of any fraud by the attorney, as it was clear the sisters had wanted to donate their property to charity. (*Id.* at pp. 909, 912.) And second, the law favors charitable contributions and makes every effort to facilitate them. (*Id.* at p. 914, fn. 5.)

■ We choose to apply *Eugene* here. We therefore hold that Jenee's and Patterson's belated attestations of Ben's acknowledgement of the power of attorney satisfied the Probate Code's requirement of signatures by two witnesses. (§ 4122, subd. (c).) We find *Eugene's* policy considerations particularly apt here. First, Daniel's exercise of power of attorney benefited charity. (*Eugene, supra,* 104 Cal.App.4th at p. 914, fn. 5 [the law favors charitable contributions].) And, more importantly, there is no evidence of fraud in Jenee's and Patterson's postdeath signatures. To the contrary: Jenee stands to inherit one-quarter of Ben's estate if Daniel's power of attorney were found invalid. Thus, it is in her pecuniary interest to support, not oppose, appellant's petition by denying her attestation. Despite her potential financial windfall were she to say otherwise, she nevertheless affirms her attestation, giving it (as the trial court implicitly found) all the more credibility.

We find appellant's reliance on *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1204–1205 [116 Cal.Rptr.2d 319], unpersuasive. That case barred from probate a codicil signed by a witness who had watched the testator sign the codicil, but did not sign the witness attestation until after the testator's death. (*Id.* at pp. 1202–1203.) In a case of first impression, the court held the postdeath attestation was invalid. (*Id.* at pp. 1204–1205.) The court's reasoning focused on the hazard of a will's enforcement hinging on the whims of a witness, who may, or may not, choose to thwart the testator's will by refusing to subscribe the will at a time where the dead testator can no longer do anything to ensure his will's validity. (*Id.* at p. 1205.) The court concluded such circumstances invited fraud. (*Id.* at p. 1205.)

We find that *Contreras's* concerns, regardless of their possible general validity, are inapplicable here. No suspicion of fraud exists in Daniel's contributing Ben's separate property to charity. If anything, the risk of fraud flows the other way, in that Jenee currently gets none of Ben's property, but would get one-quarter of it if appellant defeated Daniel's power of attorney.[4]

---

[4] We wish to emphasize how important the absence of any hint of fraud is to our holding. The *Contreras* court was reasonably concerned about the risk of fraud, for after-death attestations are potentially rife for abuse. If the evidence of no fraud in this case were less strong, we would be less certain to apply *Eugene* over *Contreras.* But the clear and convincing

██ We thus apply *Eugene* as the more recent, and more apt, statement of the law. Accordingly, the trial court did not err in finding Jenee's and Patterson's attestations after Ben's death properly acknowledged his creation of a power of attorney.

## DISPOSITION

The order is affirmed. Respondents to recover their costs on appeal.

Cooper, P. J., and Boland, J., concurred.

On January 20, 2004, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 17, 2004.

.

---

evidence of no fraud here permits us to harmonize *Eugene* and *Contreras* in spirit, if not in fact. Both recognized the potential for fraud, but *Contreras* found its facts posed an unacceptably high risk, whereas *Eugene* concluded its facts presented virtually no risk. We join *Contreras* and *Eugene* in recognizing such risks, but favor *Eugene's* analysis in the particulars of this case because, like *Eugene*, there is no evidence of fraud here.