[Civ. No. 22100. Third Dist. Feb. 23, 1984.]

Estate of JOE LOPES, Deceased.
ANTONIO LOPES, as Executor, etc., Petitioner and Appellant, v.
JOSEPH VERNON LOPES, Contestant and Respondent.

**COUNSEL**

Bruce B. Alexander for Petitioner and Appellant.

Susan C. Harlan for Contestant and Respondent.

## Opinion

**BLEASE, J.**—This is an appeal from a judgment denying a will admission to probate because it was expressly revoked by a subsequent will. (See Prob. Code, § 1240.[1]) The original of the subsequent will has not been produced and, by stipulation, it cannot meet one of the conditions imposed by section 350[2] for its admission to probate as a lost or destroyed will. Nonetheless, we hold the revocation clause in the subsequent will may be given effect resulting in the distribution of the estate by the rules of intestacy. We will affirm the judgment.

### Facts

Joe Lopes died, a single man, on January 29, 1981. He left an estate valued at $18,000. Joseph Vernon Lopes (Joseph), Joe Lopes' only child, successfully petitioned for letters of administration on the premise his father died intestate. Antonio Lopes (Antonio) petitioned for probate of a will of Joe Lopes executed on March 5, 1977 (the 1977 will) which names him as executor and would distribute the estate in his favor.[3]

By stipulation of the parties, both the 1977 will and a subsequent will executed on January 22, 1979, were validly executed. There is no challenge to the authenticity of the copy of the 1979 will. It is stipulated the 1979 will cannot be given testamentary effect solely because it cannot be shown to have been in existence on the date of the testator's death, as required by section 350. The 1979 will expressly revokes all prior wills. It provides nothing for Antonio and $1,000 for Joseph's granddaughter. The remainder of the estate apparently goes to Joseph.

The 1979 will was drafted by Robert A. Zarick, an attorney now deceased. After execution the original of the will was left with him. The stipulation of the parties recites: "No evidence has been found from which it could be inferred or otherwise proven that the original of the 1979 will was ever in the possession of any particular person other than ROBERT A. ZARICK after it was delivered to him. [¶] Notwithstanding diligent efforts

---

[1]All nondescript statutory references are to the Probate Code.

[2]Section 350 provides: "No will shall be proven as a lost or destroyed will unless proved to have been in existence at the time of the death of the testator, or shown to have been destroyed by public calamity, or destroyed fraudulently in the lifetime of the testator, without his knowledge; nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

[3]All funds in a named bank account (inferably amounting to $800) and the watch and jewelry of Joe Lopes would go to Joseph. Joseph's granddaughter would receive $1,000. The remainder of the estate would go to Antonio. Joe Lopes' sister, the other potential recipient of a bequest, apparently predeceased him.

by [Joseph's counsel] and other persons known to her, the original of the 1979 will has not been found . . . . [¶] No evidence has been found from which the 1979 will could be 'proven as a lost or destroyed will' for purposes of Probate Code section 350.''

The trial court upheld Joseph's contest of the 1977 will.

DISCUSSION

I

 Antonio argues the trial court erred in taking cognizance of the revocation clause in the 1979 will. His thesis, broadly stated, is that no portion of the 1979 will may be used as evidence for any purpose unless it is "proven," by which he means admitted to probate, a condition which cannot be met here. Antonio errs in reading section 350 as a general rule of evidence.

 "A *will* is an instrument in or by virtue of which a qualified person legally and intentionally directs the disposition of his property, to become effective only following the death of such person. It is *ambulatory, i.e.,* ineffective during the testator's life.'' (7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 85, p. 5605.) Section 74 provides that a written will may be revoked by the testator by a subsequent will or other writing complying with the formalities for execution of a will or by destruction of the will with intent to revoke.[4] The question is: where revocation is by a written will, can it be effective if the will does not meet the requirements of section 350? Resolution of the question has two parts. Is section 350 generally meant to be a rule of evidence? If not, are the policies behind the requirement that a lost or destroyed will be shown to exist at the time of death of the testator or destroyed under the conditions stated in the statute offended by taking cognizance of the revocation clause?

II

The question of section 350's evidentiary effect has arisen in two cases which have addressed the statute's requirement of two witnesses to prove

---

[4]In pertinent part, section 74 provides revocation may be accomplished: "(1) By a written will, or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities required for the execution of a will; or, [¶] (2) By being burnt, torn, canceled, defaced, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence and by his direction. If such act is done by any person other than the testator, the direction of the testator, and the fact of such injury or destruction, must be proved by two witnesses.'' This section stems from the Civil Code of 1872, former Civil Code section 1272.

the contents of a lost or destroyed will. (See *Estate of Thompson* (1921) 185 Cal. 763 [198 P. 795]; *Estate of Ruben* (1964) 224 Cal.App.2d 600 [36 Cal.Rptr. 752].) While that requirement is not in issue here the analysis is apposite.

Antonio's view that section 350 is an evidentiary bulwark against giving effect to the revocation clause is well espoused in the lead opinion in *Estate of Thompson, supra,* 185 Cal. 763. In *Thompson* the decedent executed two wills eight years apart leaving virtually all her estate to her sister. The sister offered the will for probate. The decedent's surviving (disinherited) husband contested admission of that will to probate on the ground it had been revoked by the subsequent will. The sister then offered the subsequent will as a lost or destroyed will. The husband opposed the second will on the ground it was not established by two witnesses. (*Id.,* at p. 765.)

Four justices agreed the second will did not revoke the first will. Three justices (a headnote-commanding plurality) said the same quantum of proof for a lost or destroyed will is required for admission of the will to probate or for use of the will to prove a revocation. (*Id.,* at p. 782.) The plurality opinion reasons that a will with a revoking clause is an integrated document (pp. 768-769); where the whole document cannot be given testamentary effect for noncompliance with section 350, neither should any of its parts. (Pp. 776-777.)

The opinion acknowledges the rule in other jurisdictions is to the contrary.[5] (P. 780.) But it observes California has a special situation: "[U]nder our peculiar statute[6] . . . an arbitrary rule exists with reference to lost and destroyed wills." (P. 769.) The two-witness requirement is said to advance a policy of prevention of perjury and fraud, a policy that "applies with almost equal force to the revoking clause, which, if established, will as effectively defeat the intention of the testator as would a fraudulent will." (P. 781.) Accordingly, the *Thompson* plurality would bar evidence of a revocation clause unless two witnesses to the will's contents are available.[7]

[5](Also see Annot. (1935) 94 A.L.R. 1024; 2 Page on Wills (Bowe-Parker rev. 1960) § 21.48; see generally Annot. (1953) 28 A.L.R.2d 526.)

[6]The case concerned a predecessor to Probate Code section 350, former Code of Civil Procedure section 1339 (Stats. 1907, ch. 100, p. 122), which, on the point in issue, provided as section 350 presently does.

[7]For a history and spirited attack on the requirement of two witnesses as benighted see 7 Wigmore on Evidence (Chadbourne rev. ed. 1978) chapter 71, page 322 et seq. Note the requirement is not for two attesting witnesses and literal compliance with it could be obtained, assuming proper foundation, from any two witnesses. (See Evid. Code, § 1411 et seq.) What application the requirement should be given when a copy of the will is properly authenticated is unsettled. (Compare *Estate of Moramarco* (1948) 86 Cal.App.2d 326 [194 P.2d 740] (questioned in 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills & Probate § 380, p. 5844) with *Estate of Ruben* (1964) 224 Cal.App.2d 600 [36 Cal.Rptr. 752]; also see *Estate of Patterson* (1909) 155 Cal. 626, 632 [102 P. 941]; Annot. (1955) 41 A.L.R.2d 393.)

The necessary concurring vote was Justice Sloane who rejected this ratio decidendi. (Pp. 786-789.) He relied on the doctrine of dependent relative revocation, that the revoking clause of the second will should not be given effect when it was conditioned on the expectation the second will would be effective. (Pp. 787-788.) (The plurality opinion endorsed this view as an alternate ground of decision.) (P. 786.) The three dissenters flatly rejected the evidentiary proposition of the plurality opinion. (P. 797.) Accordingly, even setting aside the distinction that *Thompson* addresses the two witness requirement, an issue not present here,[8] it is not controlling authority for the view section 350 is a rule of evidence.[9]

Nor do the cases cited by the lead opinion in *Thompson* (pp. 770-771) for the generalized proposition that admission to probate is a condition precedent for introduction of evidence of the contents of a will bear up under close examination. The clearest statement to this effect is in *Estate of Patterson* (1909) 155 Cal. 626, 636 [102 P. 941]. However, the statement is made in passing and is dicta at best. The remaining cases, upon which the *Patterson* dicta is based, address the boundary line between probate jurisdiction and equity jurisdiction and do not focus on admission to probate as a rule of evidence. Their authority, slight at best, is dissipated by the subsequent erosion by statute of the sway of probate jurisdiction by enlargement of the province of quiet title. (See, e.g. Stats. 1895, ch. 77, p. 72.)

This statutory development undercuts the notion there has been a legislative policy choice to subject wills to distinct rules for use as evidence. Currently title to both real and personal property may be litigated in a quiet title action. (Code Civ. Proc., § 760.020.) If, in such an action, "the validity or interpretation of a gift, devise, bequest, or trust, under a will or instrument purporting to be a will, whether admitted to probate or not, is involved: (1) The will or instrument purporting to be a will is admissible in evidence. . . ." (Code Civ. Proc., § 764.020, subd. (a)(1).) The effect of this provision is to remove admissibility of a will to probate as a precondition to its admission as evidence. (See *Estate of Patterson, supra,* 155 Cal. at p. 636.) Why the evidence rules should be different in probate than in quiet title is not apparent.

---

[8] No challenge is made to the authenticity of the copy of the 1979 will.

[9] Antonio's citation of the lead opinion as a holding is inaccurate. If it is any consolation to him, he has illustrious company in this error. (See 7 Witkin, *supra,* § 383, p. 5846; 7 Wigmore on Evidence, *supra,* § 2052, p. 400, fn. 3; *Estate of Ruben, supra,* 224 Cal.App.2d 600, 615.) This miscitation eviscerates *Ruben, supra,* as independent authority for Antonio's view. Moreover, the statement in *Ruben* is dicta. The *Ruben* court upheld rejection of a purported lost or destroyed will from probate. Thereafter it considered the claim the revocation clause in the rejected will should be given effect. However, the standing of the proponent of the rejected will in probate to contest the prior will entirely depended on the rejected will. Reaching the question at her behest was unwarranted. (See § 370; 7 Witkin, *supra,* § 384 et seq., esp. § 387.)

 Section 350 does not read as a general rule of evidence. It says that its requirements apply to the testamentary end whether a "will shall be proven *as a lost or destroyed will . . . ."* Whether or not a will is lost or destroyed does not necessarily bear on its antecedent effect as a revocation of a prior will. The notion that section 350 is a rule of evidence is undercut by case law holding that if the second will is revoked, i.e., by destruction with intent to destroy, its revocation of the first will is admissible in evidence on the testimony of one witness. (See, e.g. *Estate of Johnston* (1922) 188 Cal. 336, at pp. 342-344 [206 P. 628].)

Revocation of a will is expressly governed by section 74. (Fn. 4, *ante.*) This statute permits revocation of a written will by a later will or other writing of the testator executed with the chastening formalities required for a will. If the decedent chooses the latter course and the original of his revocation is lost, proof of the "other writing" is governed by the rules of evidence applied to all writings. (See Evid. Code, § 1400 et seq., esp. § 1501.) The only basis for a distinction between an "other writing" and a will is the possibility the testator may have conditioned revocation of a precedent will on the effectiveness of the will's successor provisions. But allaying this concern is the doctrine of dependent relative revocation, the majority view in *Estate of Thompson, supra,* 185 Cal. 763. This doctrine is more faithful to the fundamental precept of carrying out the wishes of the decedent than the clumsy application of section 350 to an inapposite context.

For these reasons there is no warrant for the conclusion the preconditions for admitting a will to probate are meant to apply to its admission in evidence for other purposes. (See *Estate of Strickman* (1966) 247 Cal.App.2d 469, 472 [55 Cal.Rptr. 606]; see generally Comment (1926-1927) 15 Cal.L.Rev. p. 164.)

### III

No legitimate purpose would be served in this case by application of section 350 as a barrier to proof of a revocation of the 1977 will. The impediment to admission to probate of the 1979 will is lack of proof it was in existence at the time of death of the testator or had been fraudulently destroyed during his lifetime. This element of section 350 dovetails with the right of the testator to revoke a will by destruction. (See § 74, fn. 4, *ante.*) The manifest purpose of the "in existence" requirement is to prevent a will revoked by destruction from being given effect.[10] To employ this precondition, as Antonio requests, is to find, by a

---

[10]A parallel purpose fuels the judicially created rebuttable presumption that if a will when last seen or known to exist was in the possession of the testator and cannot be found at death, it was destroyed by the testator with the intent to revoke. (See, e.g. *Estate of Johnston* (1922) 188 Cal. 336, 339-340 [206 P. 628].)

burden of proof device, that the 1979 will was destroyed with intent to revoke it. But if the 1979 will were in fact revoked its revocation clause could be admitted into evidence regardless of an inability to satisfy section 350. (*Estate of Johnston, supra,* 188 Cal. 336.) Once proved in this fashion, the clause compels rejection of the 1977 will.

Alternatively, if section 350 is a needless ward against the 1977 will because it was not revoked, the same result should obtain. No problem of dependent relative revocation is presented. The terms of the 1979 will give rise to no inference of conditional revocation and the record reflects no challenge on this basis.[11] If unrevoked, the 1979 will would also compel the rejection of the 1977 will.

Antonio seeks title to Joe Lopes' property based upon his expressed testamentary intentions. The only sure way to frustrate these intentions is to apply section 350 as a literal rule of evidence. We will not read section 350 to reach this result.

The judgment is affirmed.

Evans, Acting P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 18, 1984.

---

[11]The only person who could claim rights under both wills, Joseph's daughter, makes no claim in this action.