44 Cal.Rptr.3d 672 (2006)
38 Cal.4th 1045
136 P.3d 201
ESTATE OF Timothy Kirk SAUERESSIG, Deceased.
Scott Smith, Petitioner and Appellant,
v.
Shirley K. Goff, Objector and Respondent.
No. S129110.
Supreme Court of California.
June 22, 2006.
Paul Buchberg, Los Angeles, for Petitioner and Appellant.
Hinojosa & Wallet, Lynard C. Hinojosa, Trudi Sabel, Los Angeles, and Andrew M. Wallet for Objector and Respondent.
CORRIGAN, J.
A will that meets statutory requirements is effective upon the testator's death. (Cook v. Cook (1941) 17 Cal.2d 639, 646, 111 P.2d 322 (Cook); Estate of Lopes (1984) 152 Cal.App.3d 302, 305, 199 Cal. Rptr. 425 (Lopes).) Probate Code section 6110 requires a will be signed by two witnesses.[1] The question here is whether the signature of a witness affixed after the testator's death satisfies the statute. We conclude that such postdeath subscription is not permitted, and reverse the contrary Court of Appeal judgment.

I. FACTUAL AND PROCEDURAL BACKGROUND[2]
On December 26, 2000, Timothy Kirk Saueressig asked Joongok Shin, a notary *673 public, to notarize the execution of his will.[3] Ms. Shin did so, and Saueressig delivered copies to Scott Smith and Harry Ernst. Under the will, Smith was named executor. He, Ernst, and Cliff Thomas were beneficiaries.
Saueressig died in August 2002. In October, Smith filed a petition to probate the will, supported by a proof of subscribing witness, executed by Ms. Shin. Smith argued that, although the will was typewritten, it qualified as a holographic will. Smith based the claim on the fact that the typed will was found in an envelope on which decedent had handwritten: "DEC. 26th, 2000" and "TIMOTHY K SAUERESSIG'S LAST WILL AND TESTAMENT."
The public administrator filed objections and exceptions to the petition, asserting that the proposed will failed to comply with the statutory requirements. He also filed a competing petition for letters of special administration. On December 16, 2002, the trial court denied the petition for probate, finding that the will did not qualify as holographic because its material terms were typed. Nor did it qualify as a formal will because, having been signed by only one witness, it failed to meet the two-signature requirement of section 6110. The court granted the petition for letters of special administration.
A week later, Estate of Eugene (2002) 104 Cal.App.4th 907, 128 Cal.Rptr.2d 622 (Eugene) was filed. Eugene held that under its particular circumstances, the signature of a witness subscribed after a testator's death was valid under section 6110. (Eugene, at p. 909, 128 Cal.Rptr.2d 622.) Relying on Eugene, Smith filed an "alternative motion" for relief from the order denying probate of Saueressig's will.
Smith urged there was a second qualifying witness, Theodore Boody, who was notary Shin's husband. According to his March 25, 2003 declaration, Boody heard decedent ask Shin to notarize the will, saw decedent sign the document, and saw Shin notarize decedent's signature. Boody understood that the document signed and notarized was decedent's will, and was "ready and willing to sign the will as a witness to the signing of the will by [decedent] on December 26, 2000." Shirley K. Goff and the public administrator opposed Smith's motion, which the trial court denied.
The Court of Appeal reversed, concluding that the trial court abused its discretion in denying relief to Smith and excluding the will from probate.
We granted Goff's petition for review.

II. DISCUSSION
The right to dispose of property by will is entirely statutory. (Kizer v. Hanna (1989) 48 Cal.3d 1, 10, 255 Cal.Rptr. 412, 767 P.2d 679.) "The Legislature may withhold the right altogether, or impose any conditions or limitations upon it which it chooses." (Estate of Burnison (1949) 33 Cal.2d 638, 640, 204 P.2d 330, affd. sub nom. United States v. Burnison (1950) 339 U.S. 87, 95, 70 S.Ct. 503, 94 L.Ed. 675.)
Before 1985, a formal will required attestation by two witnesses in the presence of the testator. (Former § 50, as amended by Stats.1982, ch. 187, § 1, p. *674 569, and repealed by Stats.1983, ch. 842, § 18, p. 3024.) The required presence of the testator foreclosed any argument that a witness's signature affixed after the testator's death would satisfy the statute.
In 1982, in response to an Assembly resolution, the California Law Revision Commission (Commission) submitted its Tentative Recommendation Relating to Wills and Intestate Succession. (16 Cal. Law Revision Com. Rep. (1982) p. 2301; see Stats.1980, Res. ch. 37, p. 5086.) As relevant here, the Commission observed that "[t]he formalities for execution of an attested will are to ensure that the testator intended the instrument to be a will, to minimize the opportunity for fraudulent alteration of the will or substitution of another instrument for it, and to provide witnesses who can testify that the testator appeared to be of sound mind and free from duress at the time the testator signed or acknowledged the will. These purposes are served by the existing requirements that the will be in writing, be signed by the testator, and be signed by two witnesses who understand that the instrument is the testator's will and who were present at the same time to witness the testator's signing of the will. The proposed law continues these requirements." (16 Cal. Law Revision Com. Rep., supra, p. 2320, fns. omitted.)
In 1983, effective January 1, 1985, the Legislature substantially revised the Probate Code.[4] As part of that revision, section 50 was repealed and replaced by section 6110.[5] (Stats.1983, ch. 842, §§ 18, 55, pp. 3024, 3049.) Section 6110, subdivision (c) (section 6110(c)) provides a will "shall be witnessed by being signed by at least two persons each of whom (1) being present at the same time, witnessed either the signing of the will or the testator's acknowledgment of the signature or of the will and (2) understand that the instrument they sign is the testator's will."
Section 6110 eliminated several technical requirements, including "that the witnesses sign the will in the testator's presence." (Sen. Rep., 3 Sen. J., supra, p. 4872; 16 Cal. Law Revision Com. Rep., supra, at p. 2393.) Section 6110 continued "the requirements of former Section 50 that (1) the will be in writing, (2) that the will be signed by the testator or by someone else who signs the testator's name in the testator's presence and by the testator's *675 direction, (3) that the will be signed or the testator acknowledge the signature in the presence of two witnesses who are present at the same time, and (4) that the witnesses sign the will."[6] (Sen. Rep., 3 Sen. J., supra, p. 4872; 16 Cal. Law Revision Com. Rep., supra, p. 2393.)
The issue here is the scope of the legislative intent in eliminating the requirement that the witnesses sign the will in the testator's presence. Plainly, section 6110(c) contains no express temporal limitation on when the witnesses must sign the will in order for the document to be valid.[7] Thus, it is ambiguous as to whether it permits postdeath attestation.
The Courts of Appeal have reached differing conclusions as to whether section 6110(c) permits attestation after the testator's demise. Thus, in Crook v. Contreras (2002) 95 Cal.App.4th 1194, 1199, 1201, 1203, 116 Cal.Rptr.2d 319 (Crook), the trial court denied a probate petition, concluding in part that proffered codicils were invalid because they lacked two signatures.
The Court of Appeal affirmed, observing that the question of whether valid attestations could be made after the testator's death "has never been addressed in California and has been repeatedly rejected by the courts in other jurisdictions. We are unpersuaded that we should chart a new course. Our independent construction of Probate Code section 6110, in light of its legislative history, discloses no indication that the Legislature intended by its 1983 statutory revision to permit postdeath subscription of a will. A conclusion otherwise would attribute to the Legislature an intent to allow the validity of a will to depend upon the will or caprice of one who had been requested to perform the very simple act of becoming a witness by allowing such a person to wait until after the testator's death to decide whether or not to subscribe his or her signature to the will. Such an interpretation would invite fraud and subvert the basic intent of will authentication requirements. We conclude that the subscription of a will by two witnesses must occur prior to the testator's death, and a will that has not been subscribed by two witnesses at the time of the testator's death neither complies nor substantially *676 complies with Probate Code section 6110." (Crook, supra, 95 Cal.App.4th at p. 1205, 116 Cal.Rptr.2d 319, fn. omitted.)
Subsequently, in Eugene, supra, 104 Cal.App.4th 907, 909, 128 Cal.Rptr.2d 622, two heirless sisters prepared mutual wills. Each left her estate to the other, and upon the death of the surviving sister, to charity. (Ibid.) The sisters' attorney, who was also a witness, inadvertently signed only the will of the first sister to die. (Ibid.) Upon the second sister's death, the attorney apparently sought to satisfy section 6110 by executing a proof of subscribing witness, and providing a declaration that he had prepared both wills and observed their execution. He "had believed he had signed both wills at the time they were executed." (Eugene, at p. 909, 128 Cal. Rptr.2d 622.) The public administrator objected to the petition for probate. The trial court denied the petition because the attorney had not signed the will during the testator's lifetime. (Eugene, at p. 910, 128 Cal.Rptr.2d 622.)
The Court of Appeal reversed. (Eugene, supra, 104 Cal.App.4th at p. 914, 128 Cal.Rptr.2d 622.) In directing that the will be probated, the Court of Appeal placed heavy reliance on the fact that neither the "public administrator or anyone else" opposed the charitable beneficiary's appeal, and that "there is not the slightest hint of fraud or any wrongdoing by anyone involved at the time the wills were executed or at any time thereafter." (Id. at pp. 910, fn. 1, 912, 914, fn. 5, 128 Cal.Rptr.2d 622.) It distinguished the authorities on which Crook, supra, 95 Cal.App.4th 1194, 116 Cal.Rptr.2d 319 relied as all involving actual disputes, either by will contest or by competing petitions for probate. (Eugene, at p. 914, fn. 5, 128 Cal.Rptr.2d 622.) The court emphasized that it was presented with no such dispute, and disfavored escheat rather than the testator's intended charitable disposition. (Ibid.) Eugene therefore "disagree[d] with the absolute rule articulated" in Crook, and concluded "instead that, at least on the facts of this case, a postdeath subscription of a will is not prohibited by section 6110." (Id. at p. 914, 116 Cal.Rptr.2d 319.)
A number of states have construed statutes similar to section 6110 as prohibiting postdeath attestation. In re Estate of Flicker (1983) 215 Neb. 495, 339 N.W.2d 914, construed Nebraska's statute "to require that the witnesses to a will must sign it before the testator's death. A line must be drawn, and we believe that it is unreasonable to follow the alternative of permitting witnesses to sign a will at any time after the testator's death and prior to the 3-year statute of limitations for probate or testacy proceedings.... As a practical matter, we can think of no good reason for a delay in signing by witnesses until after the testator's death. Permitting witnesses to sign a will after the death of a testator would erode the efficacy of the witnessing requirement as a safeguard against fraud or mistake. We must bear in mind that we are dealing with an instrument allegedly signed or acknowledged by a man who is now dead. He is not present to confirm or reject it. Requiring completion of formalities of execution prior to death is likely to minimize miscarriages of justice." (Id. at p. 915.) Other states have made similar observations. "[I]f the will speaks as of the date of the testator's death, it follows that the document should be complete at that time. Consequently, we adopt the bright line rule that witnesses' signatures should be affixed to the document at least by the time it becomes operative, the death of the testator." (Matter of Estate of Royal (Colo.1992) 826 P.2d 1236, 1238-1239; see Matter of Estate of Mikeska (1985) 140 Mich.App. 116, 362 *677 N.W.2d 906, 910-911; Rogers v. Rogers (1984) 71 Or.App. 133, 691 P.2d 114, 115.)[8]
We find Crook, supra, 95 Cal.App.4th 1194, 116 Cal.Rptr.2d 319, and the cases from other states following a similar rule, to be persuasive. Such an interpretation is consistent with the critical principle that a will is operative following the death of the testator. (Cook, supra, 17 Cal.2d at p. 646, 111 P.2d 322; Lopes, supra, 152 Cal. App.3d at p. 305, 199 Cal.Rptr. 425.) It is not effective a week or a year later, or whenever purported witnesses manage to comply with the statutory requirement. While the dissent superficially acknowledges this rule, it nonetheless maintains that postdeath attestation is permitted. (Dis. opn., post, 44 Cal.Rptr.3d at pp. 672-673, 675, 676, 677, 136 P.3d at pp. 202, 204, 205, 206.) The dissent does not, however, cite to any statutory provision that requires probate or intestate procedures be delayed because a purported will might be posthumously attested. Nor does the dissent provide any other example in which a will was not valid at the time of death, but became so later.
Moreover, nothing in the language or legislative history of section 6110 indicates that by modifying the execution requirements, the Legislature intended to permit postdeath attestation. The Senate Committee on the Judiciary and the Commission specifically enumerated the changes section 6110 effected in the statutory scheme, and did not note that postdeath attestation was now permitted. (Sen. Rep., 3 Sen. J., supra, p. 4872; 16 Cal. Law Revision Com. Rep., supra, p. 2393; see ante, 44 Cal.Rptr.3d at pp. 674-675, 136 P.3d at pp. 203-204.) Such a dramatic change would logically have merited mention.
Indeed, the elimination of the requirement that a will be attested by two witnesses in the presence of the testator is discussed in the legislative history along with the elimination of other clearly inconsequential requirements. The Commission observed that these "ritual requirements" "often invalidate wills on technical grounds where there is no reasonable doubt that the testator intended the instrument as a will and there is no suspicion of fraud." (16 Cal. Law Revision Com. Rep., supra, pp. 2314, 2320.) Thus, section 6110 eliminated "the requirements (1) that the testator's signature be `at the end' of the will, (2) that the testator `declare' to the witnesses that the instrument is his or her will, (3) that the witnesses' signatures be `at the end' of the will, (4) that the testator `request' the witnesses to sign the will, and (5) that the witnesses sign the will in the testator's presence." (Sen. Rep., 3 Sen. J., supra, p. 4872; 16 Cal. Law Revision Com. Rep., supra, at p. 2393.) The requirement that the testator be alive when the witnesses sign cannot reasonably be termed a mere "ritual." Rather, the specific reference to these items makes it all the more unlikely that by eliminating the technical requirement that the witnesses sign in the testator's presence, the Legislature intended to make a vast and sweeping change as to when a will is effective.
The dissent relies on the fact that the Uniform Probate Code, through a comment regarding the actual statutory language, allows postdeath attestation. (Dis. opn., post, 44 Cal.Rptr.3d at p. 684, 136 P.3d at pp. 211-212.) However, we are *678 governed by section 6110(c), not the Uniform Probate Code. As noted above, the 1990 comment to Uniform Probate Code section 2-502 was not before the Legislature in 1983 when it enacted section 6110(c). Nor did the Legislature adopt language consistent with the 1990 comment either when section 6110 was repealed and reenacted without change in 1990, or when it was amended in 1996. Nor has the Legislature adopted a "harmless error" provision similar to Uniform Probate Code section 2-503, added in 1990, which provides, "Although a document or writing added upon a document was not executed in compliance with Section 2-502, the document or writing is treated as if it had been executed in compliance with that section if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute (i) the decedent's will...." In sum, there is no evidence our Legislature is persuaded by or has adopted the Uniform Probate Code's approach.[9]
In addition, while the Legislature did not expressly address the question of whether section 6110(c) permitted postdeath attestation, comments in the legislative history regarding a related area are instructive. As originally introduced, section 6110(c) required "at least two persons" be "present at the same time" to witness "either the signing of the will or the testator's acknowledgement of the signature or of the will." (Assem. Bill No. 25 (1983-1984 Reg. Sess.) as introduced Dec. 6, 1982.) The section was amended on February 1, 1983, to delete the requirement that the witnesses be "present at the same time." (Assem. Bill No. 25, as amended Feb. 1, 1983.) On April 5, 1983, the Executive Committee of the Estate Planning, Trust and Probate Law Section of the State Bar of California wrote to the Assembly Committee on the Judiciary. As relevant here, the executive committee opposed validation of "a will which is witnessed by two witnesses who are not present at the same time.... We believe there is value in having two witnesses together at the same time as an additional protection to the testator. We are concerned that under the new legislation, a testator will have one person witness but may never get around to obtaining a second witness. This will inevitably result in an increasing number of wills which are invalid on their face." (State Bar, Exec. Com. of Estate Planning, Trust and Probate Law Section, letter to Assem. Com. on Judiciary Apr. 5, 1983, p. 6.) This concern was quoted in an Assembly Committee on the *679 Judiciary analysis of Assembly Bill No. 25. (Assem. Com. on Judiciary, analysis of Assem. Bill No. 25 (1983-1984 Reg. Sess.) as amended Apr. 11, 1983, p. 5.)
On April 11, 1983, the California Law Revision Commission wrote to the Assembly Committee on the Judiciary, apparently in response to the executive committee's concerns. (Cal. Law Revision Com., letter to Assem. Com. on Judiciary re Assem. Bill Nos. 25 and 68 (1983-1984 Reg. Sess.), Apr. 11, 1983, pp. 1-2.) As relevant here, the letter stated that the "proposed law eliminates the requirement that both witnesses be present `at the same time.' Thus, for example, a will is not invalidated merely because one witness temporarily leaves the room during the execution ceremony if the testator acknowledges his or her signature to the witness when that witness reenters the room." (Id., p. 2.) The Commission observed that deleting this requirement "would adopt the Uniform Probate Code rule and the rule that is in effect in the large majority of states." (Id., pp. 2-3.) The "justification of the change recommended by the Commission is given in more detail" in an attached December 17, 1982 letter from Professor Jesse Dukeminier. (Id., p. 3.) In that letter, Professor Dukeminier responded to the executive committee's concern "that abolishing the simultaneous presence requirement might result in wills failing because testator, knowing that the witnesses do not have to be present at the same time, may delay securing a second witness so long that he dies without a second witness to his will.... I think it would be an extremely rare case where a person would get one witness on a will and then wait for a month or a year to secure a second.... [I]t is my belief ... that many more wills will fail because of the simultaneous presence requirement than will fail because the testator procrastinates in securing a second witness and dies in the meantime.... I see no reason to penalize [testators] out of a fear that someone will too long delay securing the second witness. If the will of the procrastinator is invalid, I shall shed few tears." (Professor Jesse Dukeminier Dec. 17, 1982, letter to Mr. John DeMoully, executive secretary, Cal. Law. Revision Com., pp. 2-3.)[10]
On April 20, 1983, Assembly Bill No. 25 was amended to place back into section 6110(c) the simultaneous presence requirement. (Assem. Bill No. 25 (1983-1984 Reg. Sess.) as amended Apr. 20, 1983, p. 28.) Thus, it appears that the Legislature was cognizant of concerns that a testator might delay too long, i.e. until his death, to procure a second witness, and that his will would thereby be invalid. There is no hint in any of this discussion that a witness could render a will valid by signing it after the testator's death.
Our conclusion regarding the legislative intent is consistent with sound public policy. As the Commission observed, "The formalities for execution of an attested will are to ensure that the testator intended the instrument to be a will, to minimize the opportunity for fraudulent alteration of the will or substitution of another instrument for it, and to provide witnesses who can testify that the testator appeared to be of sound mind and free from duress at the time the testator signed or acknowledged the will." (16 Cal. Law Revision Com. Rep., supra, p. 2320, italics added, fn. omitted.) The opportunity for fraud is *680 obviously greater once the testator is dead. The lack of any requirement that the testator be living when the witness signs the will would deprive the testator of the chance to dispute the attestation and the consequent validity of the will. Only if he is still alive can the testator say, "This will is not mine," or "I did not ask this person to witness my will." Interpreting section 6110(c) to allow postdeath attestation would, for example, permit a witness to validate a will that the deceased testator executed, but deliberately did not have signed because of changed intent.
A rule allowing postdeath attestation would essentially substitute oral testimony for the Legislature's requirement of a written signature. It would encourage will contests and put witnesses, not the testator, in control of the disposition of an estate. As one court observed decades ago, if witnesses could sign after the testator's death, "`[t]he final disposition of the estate would thereby be made to depend, not solely upon the intention of the testator, but upon the will or caprice of one who had been requested to perform the very simple act of becoming a witness. The legislature never intended to give to subscribing witnesses such power. A will must be a valid, perfect instrument at the time of the death of the testator. It takes effect at the instant the testator dies. If invalid then, life cannot be given to it by the act of a third party.'" (In re Cannock's Will (N.Y.Sur.1948) 81 N.Y.S.2d 42, 42-43.)
The dissent expresses the concern that by concluding postdeath attestation is not permitted by the statute, we are "supplying language the Legislature omitted." (Dis. opn., post, at 44 Cal.Rptr.3d at p. 686, 136 P.3d at p. 213.) Similarly, the dissent states, "The majority apparently concludes that the Legislature must have made a mistake in removing the requirement that a witness sign a will in the presence of the testator without inserting a requirement that the witness sign the will before the testator's death." (Ibid.)
In fact, the opposite is true. Section 6110(c) requires that the will "be witnessed by being signed by at least two persons." If we were to conclude that postdeath attestation is available, we would be adding the language "before or after the testator's death" to the current statutory requirement. We agree that it is not for us to draft statutes in the Legislature's stead. Rather, the task here is to discern what the Legislature meant by the language it has chosen. The Legislature may at some point conclude that postdeath attestation offers sufficient safeguards against fraud to allow it. That is its prerogative. However, in the absence of any evidence the Legislature has added this option to the Probate Code, it is not up to this court to do so. Given the history and context of section 6110(c), the most reasonable interpretation of the statutory language is that postdeath attestation is not an act the Legislature has authorized.
The understandable desire to effect apparent testator intent led to the outcome in Eugene. Subsequent cases, however, including this one, highlight Eugene's potential pitfalls. While one purpose of section 6110(c)'s requirements is to prevent fraud, the courts are not empowered to rewrite the code simply because evidence of fraud may be absent. Such an approach would require the trial courts to examine each case on its own facts before admitting a will to probate. This ad hoc procedure, with its attendant delay and potential for inconsistency, is avoided by our holding that section 6110(c) requires attestation prior to the testator's death. We disapprove Estate of Eugene (2002) 104 Cal. App.4th 907, 128 Cal.Rptr.2d 622, to the *681 extent it interprets section 6110(c) as permitting postdeath attestation.

DISPOSITION
The Court of Appeal's judgment is reversed. The matter is remanded to that court with instructions to direct the trial court to reinstate its previous order denying probate of Saueressig's will.
WE CONCUR: GEORGE, C.J. KENNARD, BAXTER, and CHIN, JJ.
Dissenting Opinion by MORENO, J.
Shortly before his death, Timothy Saueressig prepared his will, without the help of a lawyer, leaving his property to three friends. The majority holds that Saueressig's will is invalid, and his property cannot go to the friends he named as his beneficiaries, because he failed to comply with a requirement that appears nowhere in the applicable statutes. I dissent.
The facts of this case are undisputed. On December 26, 2000, Timothy Saueressig typed his will, which left his property to his friends, Scott Smith, Harry Ernst, and Cliff Thomas, and named Smith as his executor. Saueressig had no brothers or sisters and his parents were deceased. He never married and had no children. To his beneficiaries' knowledge, he had "no known next of kin."[11]
Saueressig took the will to his friends Joongok Shin and her husband Theodore Boody at the Mail Boxes Etc. franchise that Shin owned to have Shin notarize his will. Saueressig explained to them that he had drafted his will to eliminate one of the beneficiaries under a previous will. Boody watched as Saueressig signed the will and Shin notarized his signature.
Saueressig delivered a copy of the will to Smith, who kept it until Saueressig's death on August 30, 2002. Smith "took care of [Saueressig]'s affairs after his death," paying for his funeral expenses and making the mortgage, insurance, and maintenance payments for his residence. Smith petitioned to probate the will, but the public administrator objected. On December 16, 2002, the court denied the petition, finding the will did not qualify as a holographic will because its material terms were typed and it did not qualify as a formal will because it was signed by only one witness, the notary Shin, rather than two witnesses as required by Probate Code section 6110, subdivision (c).[12]
One week after the superior court denied the petition to probate the will, the Court of Appeal published its decision in Estate of Eugene (2002) 104 Cal.App.4th 907, 912, 128 Cal.Rptr.2d 622, holding that a witness will may sign the will after the death of the testator. In light of this new authority, Smith renewed his petition to probate the will, providing the declaration of Boody that both he and Shin had watched Saueressig sign the will and he was prepared to sign the will as the necessary second witness. Shirley Goff opposed the motion, alleging that Saueressig had "intestate heirs."[13] The public administrator joined the opposition and the superior *682 court denied the motion. But the Court of Appeal reversed, stating: "We find nothing in the language of section 6110 ... to preclude an otherwise qualified witness from signing a will after the death of the testator."
I agree with the Court of Appeal.
If Boody is permitted to sign the will as the second witness, which he is prepared to do, the requirements of section 6110, subdivision (c) will be satisfied. Section 6110, subdivision (c) requires that "[t]he will shall be witnessed by being signed by at least two persons each of whom ... being present at the same time, witnessed either the signing of the will or the testator's acknowledgment of the signature or of the will...." The statute thus requires that the will be signed by two persons who were present at the same time to witness the signing or acknowledgment of the will, but the statute places no restrictions on when the witnesses must sign the will. Boody and Shin were "present at the same time" and "witnessed ... the signing of the will." Nothing in the statute requires that Boody must have signed the will before Saueressig died.
In interpreting a statute, we are guided first and foremost by its language. "`We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citation.]" (State v. Altus Finance (2005) 36 Cal.4th 1284, 1295, 32 Cal.Rptr.3d 498, 116 P.3d 1175.) "If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (Fitch v. Select Products, Co. (2005) 36 Cal.4th 812, 818, 31 Cal.Rptr.3d 591, 115 P.3d 1233.) Nothing in the language of section 6110, subdivision (c) states or even suggests that there is a limit upon when the witnesses may sign the will.
The majority does not dispute that the statute, by its terms, does not limit when a witness may sign a will, stating: "Plainly, section 6110(c) contains no express temporal limitation on when the witnesses must sign the will in order for the document to be valid." (Maj. opn., ante, 44 Cal.Rptr.3d at p. 675, 136 P.3d at p. 204, fn. omitted.) But the majority concludes that this lack of any express limitation on when a witness may sign the will renders the statute "ambiguous as to whether it permits postdeath attestation." (Ibid.) I fail to see how the circumstance that the statute does not limit when a witness may sign a will renders the statute ambiguous with respect to postdeath attestation.
But even if we assume for purposes of argument that section 6110, subdivision (c) is ambiguous,[14] the majority's review of the legislative history of the statute does not support its conclusion that the Legislature meant to require witnesses to sign a will before the testator dies.
California law never has expressly required that witnesses sign a will while the testator is alive. The prior version of the applicable statute, however, required the witnesses to sign the will in the testator's presence. (Former § 50, as amended by Stats.1982, ch. 187, § 1, p. 569.) Former section 50 stated: "There must be at least two attesting witnesses, each of whom *683 must sign the instrument as a witness, at the end of the will, at the testator's request and in his presence." (Ibid.) The former requirement that witnesses sign the will in the testator's presence meant, as a practical matter, that they had to sign the will while the testator was alive.
In 1983, the Legislature repealed former section 50 as part of a wholesale revision of the statutes governing the execution of wills and replaced it with section 6110, which became effective in 1985. (Stats. 1983, ch. 842, § 55, pp. 3049-3092.) The chairperson of the California Law Revision Commission described this statutory revision as a "comprehensive statute governing wills and intestate succession" that was designed to "replace the comparable portion of the California Probate Code" and was "drawn in part from the Uniform Probate Code." (16 Cal. Law Revision Com. Rep. (1982) pp. 2305, 1420.) The chairperson observed that the revision "makes some significant changes in existing California law. These changes are designed primarily to simplify the administration of an intestate estate and to carry out more effectively the intent of the decedent who dies leaving a will." (Ibid.)[15] The Law Revision Commission subsequently described section 6110 as follows: "Section 6110 relaxed the formalities required under former Section 50 by eliminating the requirements (1) that the testator's signature be `at the end' of the will, (2) that the testator `declare' to the witnesses that the instrument is his or her will, (3) that the witnesses' signatures be `at the end' of the will, (4) that the testator `request' the witnesses to sign the will, and (5) that the witnesses sign the will in the testator's presence." (20 Cal. Law Revision Com. Rep. (1990) pp. 1001, 1420.)
The Legislature thus removed from the statute the requirement that the witnesses sign the will in the testator's presence, which was the only provision that, as a practical matter, had required that the testator be alive when the witnesses sign the will. As a result, section 6110 contains no provision that states or even suggests, in any manner, that a witness must sign the will while the testator is alive.
As noted above, the majority agrees that "section 6110(c) contains no express temporal limitation on when the witnesses must sign the will" (maj. opn., ante, 44 Cal.Rptr.3d at p. 675, 136 P.3d at p. 204), but concludes nevertheless that this court should interpret the statute to include an unstated requirement that the witnesses sign the will while the testator is alive. The majority proffers two reasons for reading such a requirement into the language of the statute. I find neither reason convincing.
*684 The majority concludes that "nothing in the language or legislative history of section 6110 indicates that by modifying the execution requirements, the Legislature intended to permit postdeath attestation." (Maj. opn., ante, 44 Cal.Rptr.3d at p. 677, 136 P.3d at p. 205.) I disagree. The Legislature's repeal of the only provision in the former statute that required, as a practical matter, that the witnesses sign the will while the testator was alive is a strong indication that the Legislature intended to permit a witness who was present when the testator signed the will to sign the will at any time, even after the testator has died. This conclusion is supported by the fact that section 6110, subdivision (c) was patterned in large part upon the Uniform Probate Code, which since has been interpreted to permit a witness to sign a will after the death of the testator.
Section 6110 was proposed by the California Law Revision Commission as part of a "new comprehensive statute governing wills and intestate succession" that was "drawn in part from the Uniform Probate Code." (16 Cal. Law Revision Com. Rep., supra, p. 2305.) At that time, the Uniform Probate Code imposed no restriction on when the witnesses must sign the will. In 1983, the Uniform Probate Code required that a nonholographic will "shall be signed by at least 2 persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will." (8 West's U. Laws Ann. (1998) U. Prob.Code (1969) § 2-502, p. 351.) The comment accompanying this provisions notes that "[t]he formalities for execution of a witnessed will have been reduced to a minimum.... The intent is to validate wills which meet the minimal formalities of the statute." (Id., com. to § 2-502, at p. 351.)
The Uniform Probate Code upon which section 6110 was based in part did not restrict when a witness could sign a will. It later was amended to include a temporal restriction on when a witness could sign a will, but it was not the restriction the majority assumes is implicit in section 6110 that the witness must sign the will while the testator is alive.
In 1990, the Uniform Probate Code was amended to provide that a witness to a will must sign the will "within a reasonable time" after witnessing the signing or acknowledgement of the will. (8 West's U. Laws Ann. (1998) U. Prob.Code (1990) § 2-502, subd. (a)(3), p. 144.) The comment to the amended provision states: "The witnesses must ... sign within a reasonable time after having witnessed the signing or acknowledgment. There is, however, no requirement that the witnesses sign before the testator's death; in a given case, the reasonable-time requirement could be satisfied even if the witnesses sign after the testator's death." (Id., com. to § 2-502, at p. 145.)
The Arizona Court of Appeals relied upon the above quoted comment in Estate of Jung (App.2005) 210 Ariz. 202, 109 P.3d 97, to hold that an Arizona statute that codified this provision of the Uniform Probate Code did not require that a witness sign the will prior to the death of the testator, noting that the statute required only that the witness sign the will "within a reasonable time" and adding: "The language of the statute does not limit that reasonable time to a time before the decedent's death and the comment to the [Uniform Probate Code] provision on which it is based expressly notes that a witness signing after the testator's death is not prohibited." (Id., at p. 206, 109 P.3d 97.)
The majority's conclusion that this court should read into section 6110, subdivision (c) an unstated requirement that the witnesses *685 must sign the will while the testator is alive also is based upon the fact that "a will is operative following the death of the testator." (Maj. opn., ante, 44 Cal.Rptr.3d at p. 676, 136 P.3d at p. 205.)[16] This argument has a stronger basis and, in fact, the high courts of two of our sister states relied upon this basis in concluding that statutory language similar to section 6110 does not permit a witness to sign a will after the death of the testator. (Estate of Royal (Colo.1992) 826 P.2d 1236 ["Therefore, if the will speaks as of the date of the testator's death, it follows that the document should be complete at that time. Consequently, we adopt the bright line rule that witnesses' signatures should be affixed to the document at least by the time it becomes operative, the death of the testator."]; Estate of Rogers (1984) 71 Or. App. 133, 136, 691 P.2d 114 ["A will takes effect at the time of the testator's death. [Citation.] ... If the requirements of execution have not been met at the time of the death of the testator, then the will is not valid and the purported testator has died intestate."].) But another of our sister states reached the opposite conclusion based upon reasoning that I find more convincing.
In Estate of Peters (1987) 107 N.J. 263, 526 A.2d 1005, the testator signed his will in the presence of several witnesses, including two persons who had come for the express purpose of witnessing the signing of the will, but the witnesses inadvertently failed to sign the will. The testator died 15 months later. Eighteen months after the testator died, the trial court ruled that the witnesses who were present when the testator signed the will could sign the will at that time, because the governing statute, like section 6110, did not restrict when a witness could sign the will. The Supreme Court of New Jersey disagreed, ruling that a witness must sign the will "within a reasonable period of time from the execution of the will," and concluding that, under the circumstance, 18 months was not a reasonable time. (Estate of Peters, supra, 107 N.J. at pp. 275, 278, 526 A.2d 1005.) In so holding, however, the court expressly declined to adopt a "bright-line rule" that a witness could not sign a will after the death of the testator, observing: "There may indeed be cases in which the affixation of witnesses' signatures after the testator's death would be reasonable, particularly if the witnesses were somehow precluded from signing before the testator died." (Id. at p. 278, 526 A.2d 1005.)
I agree with the Supreme Court of New Jersey that there is no bright-line rule prohibiting a witness from signing a will after the death of the testator. It is within the power of the Legislature to adopt such a rule, but it has not done so. And there is nothing inherent in the common law governing wills that requires such a rule, as is demonstrated by the fact that the Uniform Probate Code permits a witness to sign a will after the death of the testator.
The majority understandably is concerned that "[t]he opportunity for fraud is obviously greater once the testator is dead" (maj. opn., ante, 44 Cal.Rptr.3d at pp. 679-680, 136 P.3d at p. 208), but the same is true when the testator falls into a coma or becomes mentally incompetent. *686 Thus, a requirement that a witness must sign the will within a reasonable time after witnessing the testator's signature, as required by the Uniform Probate Code, would be a far more effective deterrent against fraud than a bright-line rule prohibiting a witness from signing a will even a few minutes after the testator has died but not years after the testator has become mentally incompetent. But the wisdom of such provisions is for the Legislature to debate, not this court. We must apply the law as the Legislature has written it, and section 6110, subdivision (c) does not prohibit a witness from signing a will after the death of the testator.
The majority apparently concludes that the Legislature must have made a mistake in removing the requirement that a witness sign a will in the presence of the testator without inserting a requirement that the witness sign the will before the testator's death. If this is so, it is a mistake that is beyond the authority of this court to correct. This court cannot correct a statute by supplying language the Legislature omitted, except to avoid an anomalous result that is at odds with the statutory language.[17] (State of South Dakota v. Brown (1978) 20 Cal.3d 765, 775, 144 Cal.Rptr. 758, 576 P.2d 473 ["It is a fundamental rule of statutory construction that statutes should be construed to avoid anomalies."].) That is not the case here. The result that would follow if we applied the statute according to its terms is hardly anomalous. Rather, this result would be consistent with the Uniform Probate Code and would be fair in the circumstances of this case by giving effect to the clearly expressed wishes of the decedent.
I CONCUR: WERDEGAR, J.
NOTES
[1] All further undesignated statutory references are to the Probate Code.
[2] Because there was no petition for rehearing in the Court of Appeal, we take our statement of facts largely from that court's opinion. (Cal. Rules of Court, rule 28(c)(2); People v. Hernandez (2004) 33 Cal.4th 1040, 1045, 16 Cal.Rptr.3d 880, 94 P.3d 1080.)
[3] As Smith conceded below, "the only reasonable inference to be drawn from the decedent's conduct is that he believed the notarization would validate his will."
[4] Assembly Bills Nos. 25 and 68 were "introduced to effectuate" the Commission's Tentative Recommendation. (Sen. Com. on Judiciary, Rep. on Assembly Bills Nos. 25 & 68 (1983-1984 Reg. Sess.) (hereafter Senate Report) 3 Sen. J. (1983-1984 Reg. Sess.) p. 4867.)
[5] Section 6110 provides:

"(a) Except as provided in this part, a will shall be in writing and satisfy the requirements of this section.
"(b) The will shall be signed by one of the following:
"(1) By the testator.
"(2) In the testator's name by some other person in the testator's presence and by the testator's direction.
"(3) By a conservator pursuant to a court order to make a will under Section 2580.
"(c) The will shall be witnessed by being signed by at least two persons each of whom (1) being present at the same time, witnessed either the signing of the will or the testator's acknowledgment of the signature or of the will and (2) understand that the instrument they sign is the testator's will."
Section 6110 was repealed in 1990 and reenacted that same year without change. (Stats.1990, ch. 79, §§ 13-14, pp. 463, 684.) It was amended in 1996 to add a provision unrelated to the issue in this case regarding the signing of a will by a conservator. (Stats. 1996, ch. 563, § 20, p. 3155.) Because the relevant terms of section 6110 have not changed since its 1983 enactment, we refer to both former and current section 6110 as section 6110.
[6] On July 14, 1983, the Senate Committee on the Judiciary published a report in the Senate Journal stating, "Except for the new and revised comments set out below, the Law Revision Commission Comments to Assembly Bills 25 and 68 reflect the intent of the Senate Committee on Judiciary in approving Assembly Bills 25 and 68. The new and revised Comments set out below also reflect the intent of the committee in approving this bill." (Sen. Rep., 3 Sen. J., supra, p. 4867.) Included in the comments to section 6110 is the excerpt quoted above in the text and on page 10 regarding the retained and deleted execution requirements. (Sen. Rep., 3 Sen. J., supra, p. 4872.) This identical passage also appears in the Commission's tentative recommendation. (16 Cal. Law Revision Com. Rep., supra, p. 2393; see Jevne v. Superior Court (2005) 35 Cal.4th 935, 946-947, 28 Cal. Rptr.3d 685, 111 P.3d 954.)
[7] Likewise, the Uniform Probate Code, on which the Commission at times relied in drafting its recommendations, contains no express language addressing whether a witness may sign a will after the testator's death. (Former U. Prob.Code, § 2-502; 16 Cal. Law Revision Com. Rep., supra, p. 2319.) A comment to Uniform Probate Code section 2-502 added in 1990 notes that there is "no requirement that the witnesses sign before the testator's death" and that the attestation requirement, "in a given case," could be "satisfied even if the witnesses sign after the testator's death." (8 pt. 1 West's U. Laws Ann. (1998) U. Prob.Code, com. to § 2-502, p. 145.) The comment was of course not before the Legislature when it enacted section 6110 several years earlier. Moreover, nothing in the legislative history of the enactment, reenactment, or amendment of section 6110 refers to this comment or contains any similar language regarding postdeath attestation.
[8] Other states have concluded witnesses may sign a will after the testator's death so long as the signing occurs within a reasonable time after witnessing the testator's signature or acknowledgement of the signature or of the will. (Matter of Estate of Peters (1987) 107 N.J. 263, 526 A.2d 1005, 1013; see In re Estate of Jung (App.2005) 210 Ariz. 202, 109 P.3d 97, 102.)
[9] This point distinguishes In re Estate of Jung, supra, 210 Ariz. 202, 109 P.3d 97, on which the dissent relies. (Dis. opn., post, 44 Cal. Rptr.3d at pp. 684-685, 136 P.3d at pp. 211-212.) Prior to Jung, the same Arizona Court of Appeals, interpreting a statute with language similar to that of section 6110(c), held that postdeath attestation was not permitted. (Gonzalez v. Satrustegui (App.1993) 178 Ariz. 92, 870 P.2d 1188, 1193-1195.) Subsequent to Gonzalez, "the Arizona Legislature repealed the then-existing version of the statute and enacted the current version," which was based on Uniform Probate Code section 2-502. (Jung, at p. 100.) At that time, Uniform Probate Code section 2-502 contained the 1990 comment stating that postdeath attestation was permitted. Jung observed that "[m]inutes of a judiciary committee meeting considering the proposed revision reflect that the change ... was recommended by a committee of the State Bar of Arizona `in order to conform Arizona law with revisions made to the Uniform Probate Code in 1990.'" (Jung, at p. 101.) "In light of the legislative history and the comment to [Uniform Probate Code] section 2-502, we hold that the Legislature has superseded Gonzalez." (Ibid.) Hence the Arizona Legislature expressly referenced the 1990 Uniform Probate Code in amending the relevant statute. The California Legislature has not done so with section 6110(c).
[10] Typically we do not ascribe legislative intent to letters written to the Legislature. The letters here, however, came from the Commission, which had been asked to propose changes to the Probate Code, and which drafted the provisions on which Assembly Bill No. 25 was based, and a letter that the Commission expressly stated set forth its own reasons for recommending deletion of the simultaneous presence requirement.
[11] The will repeatedly directs the beneficiaries to care for Saueressig's four cats, stating: "They are my family!!"
[12] Probate Code section 6110, subdivision (c) states: "The will shall be witnessed by being signed by at least two persons each of whom (1) being present at the same time, witnessed either the signing of the will or the testator's acknowledgment of the signature or of the will and (2) understand that the instrument they sign is the testator's will."

Further statutory references are to the Probate Code.
[13] No supporting declaration was included and the record does not reflect in what manner, if any, Goff is related to the deceased.
[14] Only if the language of the statute is ambiguous, do we consult Legislative history to decide which of two reasonable interpretations of the statutory language the Legislature intended. "`If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citation.] If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history [citation] and to rules or maxims of construction." (MW Erectors, Inc. v. Niederhauser Ornamental and Metal Works Co. (2005) 36 Cal.4th 412, 426, 30 Cal.Rptr.3d 755, 115 P.3d 41.)
[15] The introduction to the recommendation of the California Law Revision Commission states: "The California law of wills and intestate succession has had no thorough substantive revision for over a century. Changes have been piecemeal. Much of the Probate Code has not changed since it was copied from the Texas Code in 1850 or modified by the Field Code in 1872. It remains a nineteenth century code in its premises, its phraseology, and its excessive detail. [¶] Existing California law contains technical requirements that often invalidate a will, even where there is no reasonable doubt that the testator intended the instrument as his or her will and there is no suspicion of fraud. Other provisions of existing law set forth mechanical rules that produce results that are inconsistent with the testator's intent. [¶] ... [¶] The Commission recommends enactment of a new comprehensive statute, drawn in part from the Uniform Probate Code, to govern will, intestate succession, and related matters. The proposed law will make probate more efficient and expeditious. It will provide rules that are more likely to carry out the intent of the testator...." (16 Cal. Law Revision Com. Rep., supra, pp. 2318-2319, fns. omitted.)
[16] In support, the majority cites our decision in Cook v. Cook (1941) 17 Cal.2d 639, 646, 111 P.2d 322, which states the rather unremarkable proposition that "A will does not become operative until death; prior to death it is revocable at the whim of the testator...." The majority also relies upon the statement in Estate of Lopes (1984) 152 Cal. App.3d 302, 305, 199 Cal.Rptr. 425, that a will "become[s] effective only following the death of such person."
[17] The majority counters by asserting that applying the statute as I propose would effectively add to the statutory language requiring that the will "be witnessed by being signed by at least two persons" the phrase "before or after the testator's death." (Maj. opn., ante, 44 Cal.Rptr.3d at p. 680, 136 P.3d at p. 208.) This is incorrect. The phrase "before or after the testator's death" neither limits nor expands the meaning of the statutory language and thus does not alter its meaning. The statutory language, as written, requires only that the will be signed by two witnesses and places no limitation on when those witnesses may sign the will. Accordingly, the statutory language, without embellishment, permits the witnesses to sign the will at any time.